BOOKER *v.* GRAND RAPIDS MEDICAL COLLEGE.

156    95
158   2709

1. CERTIORARI—SCOPE OF REVIEW.

> In certiorari proceedings the appellate court considers questions of law only, and such questions must be raised in the affidavit for the writ.

2. COLLEGES AND UNIVERSITIES — ADMISSION OF STUDENTS — DISCRIMINATION—CONSTITUTIONAL LAW.

> Private institutions of learning, although incorporated, may select those whom they will receive as students, and may discriminate by sex, age, proficiency in learning, and otherwise; and the arbitrary refusal to receive any student, in the first instance, would not violate any privilege or immunity resting in positive law, protected or guaranteed by the Federal or the State Constitution.

3. SAME.

> Although such discrimination may be made on the original application of prospective students, such institutions may not, after having accepted and partially performed their contract, arbitrarily refuse to permit further attendance; there being no lack of mutuality nor want of consideration in the contract.

4. MANDAMUS — PROPRIETY OF REMEDY — ENFORCEMENT OF CONTRACTS.

> The writ of mandamus will not be granted to compel a private corporation to perform its obligations resting in contract with an individual.

Certiorari to Kent; Perkins, J. Submitted January 12, 1909. (Calendar No. 23,193.) Decided March 30, 1909.

Mandamus by Felix D. Booker and another to compel the Grand Rapids Medical College to receive relators as students. There was an order granting the writ, and respondent brings certiorari. Reversed, and writ dismissed.

*Martin H. Carmody,* for relators.
*Hatch & Raymond,* for respondent.

OSTRANDER, J.    The respondent is an institution incorporated under chapter 218, 2 Comp. Laws.   Its purposes, expressed in its articles of association, are to establish and operate a college for teaching medicine and surgery, chemistry, dentistry, veterinary medicine and surgery, and horseshoeing, and to grant degrees and issue diplomas in various departments of the college in conformity with law, etc.   Its rules and prospectuses do not distinguish or specify, except by age, character, and educational qualifications, the persons to whom instruction will be given.   It has capital stock, is conducted for private gain, and is supported by tuition fees paid by students.   Relators are citizens, respectively, of the States of Kansas and of Michigan, who attended the college in the department of veterinary medicine and surgery for one—the freshman—year, and were refused admission therein the second year for the sole reason that they were negroes.   They applied to the circuit court for the county of Kent for a writ of mandamus to compel the respondent to admit them as students in the college.   An order to show cause was entered and an answer to relators' petition was filed.   Thereupon 30 issues of fact were proposed by relators, and an order was made that issues be framed as proposed, and that they be submitted to the court for determination.   A hearing was had, a large amount of testimony was taken, and the writ was issued.   The respondent sued out a writ of certiorari, the affidavit for the writ setting out the petition, the answer, the testimony, verbatim or by way of recital, the issues of fact which were proposed by relators, and the reasons relied upon for a reversal of the order granting the writ.   The return to the writ is, like the affidavit, voluminous, and sets out in full the testimony produced at the hearing.   It does not appear in what manner the court determined any of the issues of fact, and the reasons given for the conclusion which was reached are not found in the record. In certiorari proceedings this court considers questions of law only, and such questions of law as are supposed to be

presented in the particular case must be raised in the affidavit for the writ.

In this case the errors specified are:

"*First*. That relators base their right to the writ of mandamus on an alleged contract, and mandamus will not issue for the purpose of enforcing contract rights.

"*Second*. Even if mandamus would issue in such case, relators do not set up in their petition a valid and enforceable contract with respondent by the terms of which respondent would be bound to admit relators to said college for the session of 1908–09.

"*Third*. The evidence shows that no contract, in fact, existed between relators and respondent which would entitle relators to be admitted to said college for the session of 1908–09.

"*Fourth*. That there was no evidence of any contract entered into between relators and respondent by the terms of which relators would be entitled to attend said college for the entire course of three years, beginning with the session of 1907.

"*Fifth*. That there was no evidence of any contract between relators and respondent which would entitle relators to be admitted as students to said college for the session of 1908–09.

"*Sixth*. That relators cannot obtain the right to enter said college as students, except by making a contract with respondent by the terms of which relators would be entitled to be admitted as students, and no such contract is shown to have existed. Neither did any such contract in fact exist.

"*Seventh*. That the alleged contract set forth in the petition is void for the reason that by its terms it was not to be performed within one year from the making thereof, and there was no note or memorandum thereof in writing signed by either party or by some person by such party thereunto lawfully authorized.

"*Eighth*. That the alleged contract set forth in the petition is void for the reason that it lacked mutuality, relators not being bound thereby to return to said college and enter for either session subsequent to that of 1907–08, or pay therefor.

"*Ninth*. There was no consideration moving from relators for the alleged contract set forth in the petition on

the part of respondent to admit relators to the session of 1908–09.

"*Tenth*. No legal duty rested upon respondent to admit relators to said college for the session of 1908–09. Respondent carries on a private school, and has the right to select such students to attend such school as it shall see fit. No person has the right to demand that he shall be admitted to said school, and respondent has the right to accept or reject any applicants for admission to said school or to any session thereof.

"*Eleventh*. The effect of said order is to compel respondent to enter into a contract with relators against the will of its officers and board of trustees, in violation of its right to contract or not, as its officers and board of trustees shall see fit.

"*Twelfth*. Said order prescribes the terms and conditions of the contract which said order undertakes to compel respondent to make with relators in violation of the right of respondent to make such terms and conditions to the contracts into which it may enter as it shall see fit within the limits of its corporate powers."

While relators do contend that the facts set out in the petition and supported by testimony establish contract relations between the parties, they also assert that the statute imposes a duty, public in its nature, upon the institution incorporated thereunder, to receive them, to compel the performance of which duty the writ of mandamus is appropriate. In the absence of findings, we have examined the record for evidence which will sustain the order of the court below. It is plain that respondent is organized for the very purpose of giving the instruction sought for by relators. The course of study adopted cannot be finished in one year. The statute requires at least two years' study before candidates may be given a diploma. In fact, the course is one of three years. It is empowered to grant diplomas and degrees to students who finish the course. The course of study adopted is not pursued by students who attend the college for the sole purpose of gaining instruction, but for the further purpose of securing, at the end of the course, the diploma and degree which respondent is empowered to

confer. By the laws of this and of other States the diploma confers upon the possessor the right to a license to practice the adopted profession. It is expressly provided in the act that diplomas granted by the trustees shall entitle the possessor to all the immunities which by usage or statute are allowed to possessors of similar diplomas granted by any similar institution in the United States. 2 Comp. Laws, § 8143. Relators matriculated, attended the college for one year, and have the standing necessary to continue the course. They are obnoxious to no rule of the institution. There is testimony tending to prove that during the year relators attended college one and perhaps more than one student withdrew because colored men were admitted, and that a considerable number of students threaten to withdraw if they are now allowed to attend.

The statute imposes no general public duty upon respondent to admit as students any and all citizens to its capacity. There is no specific duty imposed by law to admit relators. It seems clear that private institutions of learning, though incorporated, may select those whom it will receive, and may discriminate by sex, age, proficiency in learning, and otherwise. Probably no reason need be given for refusing in the first instance to admit any student. Relators have been denied no privilege or immunity resting in positive law protected or guaranteed by the Federal or the State Constitution. Such rights as they have grow out of the relations they have established with respondent, and are no other or different than those of any citizen who has established like relations with a similar institution. These relations, while in some respects peculiar, are, in fact, easily classified. There is no agreement by the terms of which respondent undertakes to bestow and they to receive and to pay for a three years' course of study upon the conditions which the rules of the institution impose. Relators are at liberty to terminate all relations at any time. It does not follow that respondent has the same right. In fact, when one is admitted to a col-

lege, there is an implied understanding that he shall not be arbitrarily dismissed therefrom. The required fees may be paid annually, and may be no more than fair fees for the advantages received by the student during the year, and yet it is clear that the fees for the first year are, in fact, paid and received with the understanding that the work of the year will not be made fruitless, a graduation and a degree made impossible, by an arbitrary refusal to permit further attendance. In this understanding there is no want of mutuality. There is no want of good and valuable consideration. There is written evidence of it in the articles of association and the prospectuses of respondent and in the rolls of the college in which relators' names are entered as matriculates. There is no good reason why the law should not recognize, as growing out of these relations, a right of relators resting in contract to be continued as students by the respondent. It is the general rule that mandamus does not lie to compel a private corporation to perform its obligations resting in contract with an individual. We are referred to no decision of this court recognizing any other rule. A case in which the rule was enforced by denying the writ to one who had completed a course in an incorporated college and had been refused a diploma is *State, ex rel. Burg,* v. *Milwaukee Medical College,* 128 Wis. 7 (3 L. R. A. [N. S.] 1115). In the opinion in that case and in the motion for a rehearing many authorities are cited, among them *Clarke* v. *Hill,* 132 Mich. 434. The writ was held to be the only adequate remedy in *Baltimore University* v. *Colton,* 98 Md. 623 (64 L. R. A. 108), and in *People, ex rel. Cecil,* v. *Bellevue Hospital Medical College,* 60 Hun (N. Y.), 107, 128 N. Y. 621. It cannot be said that relators are members of an incorporated society, and have been wrongfully deprived of the privileges of members, which is the ground of decision in *Baltimore University* v. *Colton,* supra. It may be said, perhaps, that the New York decision is rested upon the notion that relator had acquired a status, evidence of which, in the form

of a degree, was arbitrarily refused.   The court of appeals delivered no opinion.   If mere expedition in securing some remedy is to be made the test, it may be said there is no other adequate remedy for relators.   And, if enforcement of the obligations of private corporations by mandamus is to be entered upon by the courts, we know of no rule by which it can be determined in what cases the writ should be refused.   The apparent hardship of a particular situation is not a good reason for departing from the rule.

The order granting the writ is reversed, with costs to plaintiff in certiorari.

GRANT, MOORE, BROOKE, and McALVAY, JJ., concurred.