Scott E. EWING, Plaintiff-Appellant,

v.

BOARD OF REGENTS OF the UNIVERSITY OF MICHIGAN, Defendant-Appellee.

No. 83–1333.

United States Court of Appeals, Sixth Circuit.

Argued July 18, 1984.

Decided Sept. 6, 1984.

Rehearing and Rehearing En Banc Denied Oct. 31, 1984.

Michael M. Conway, argued, Mary K. Butler, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellant.

Peter Davis, argued, Davis & Fajen, Ann Arbor, Mich., for defendant-appellee.

Before KEITH, Circuit Judge, PECK, Senior Circuit Judge, and NEESE, Senior District Judge.*

KEITH, Circuit Judge.

This is an appeal by the plaintiff, Scott E. Ewing, from a reported decision of the United States District Court for the Eastern District of Michigan finding in favor of the defendant, the Board of Regents of the

* Honorable C.G. Neese, Senior Judge, United States District Court for the Eastern District of   Tennessee, sitting by designation.

University of Michigan, 559 F.Supp. 791 (E.D.Mich.1983). In the district court the plaintiff had sought an order to compel the defendant to allow him to retake the National Board of Medical Examiners' Part I Examination. For the reasons stated below, the decision of the district court is reversed and remanded with instructions that an appropriate order be entered consistent with this opinion.

In 1981, Ewing was enrolled as a student in the University of Michigan's six-year program of combined undergraduate and medical education, known as the Inteflex Program. Ewing sat for and failed the National Board of Medical Examiners' Part I Examination (NBME Part I) in June 1981. Because of his failure of the NBME Part I, Ewing was dismissed from the Inteflex Program. Ewing prosecuted two administrative appeals of the decision to dismiss him. Both appeals were denied as the Inteflex Phase II Promotions and Review Board and the Executive Committee of the Medical School determined to affirm the decision to terminate his registration.

Ewing filed suit in the United States District Court for the Eastern District of Michigan, seeking an injunction that would require the Board to permit him to take the NBME Part I again and, if he passed, to reinstate him with the same status as if he had passed on the first occasion. Ewing's amended complaint asserted claims based upon: (1) the violation under color of state law of his substantive due process rights, which is actionable under 42 U.S.C. § 1983 (Count I); (2) breach of contract (Count II) and (3) the principles of promissory estoppel (Count IV).[1] A nonjury trial of Counts I, II and IV was held in the district court in Ann Arbor, Michigan, with the Honorable Chief Judge John Feikens presiding, on January 10–12 and 14, 1983. The district court filed an opinion on March 22, 1983,

denying each of Ewing's claims and directing that an appropriate order be submitted. 559 F.Supp. 791 (E.D.Mich.1983). Based upon that opinion, the district court entered judgment in favor of the Board on April 11, 1983, and this appeal followed.[2]

■ It is well settled that in order to prevail in a Section 1983 action, the plaintiff has the burden of showing that he was deprived of a constitutional right and that the deprivation occurred under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). It is not disputed that the defendants were acting under color of state law. *Ewing v. Board of Regents of the University of Michigan*, 552 F.Supp. 881, 883 (E.D.Mich.1982). The issue then, with respect to the Section 1983 claim, is whether Ewing was deprived of a constitutionally cognizable right.

The United States Supreme Court has held that property interests, which may give rise to constitutional protections, are created and defined by existing rules or understandings which stem from independent sources, such as state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Court has also held that these property interests can arise from explicit contractual provisions or "other agreements implied from the promissor's words or conduct in light of the surrounding circumstances." *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972).

In an old racial discrimination case, *Booker v. Grand Rapids Medical College*, 156 Mich. 95, 120 N.W. 589 (1909), the Michigan Supreme Court discussed the contractual aspects of the relationship between a medical student and his institution. Although, the explicit holding of *Booker* has since been discredited, the view of the

---

1. Count III seeking monetary damages pursuant to 42 U.S.C. § 1983 was dismissed by the district court, prior to trial, based upon immunity conveyed to the Board under the 11th amendment to the United States Constitution. 552 F.Supp. 881 (E.D.Mich.1982). Ewing did not appeal the dismissal of his claim for monetary damages.

2. Because we believe this case can be disposed of on the Section 1983 claim, this Court does not expressly reach the breach of contract or promissory estoppel claims.

Michigan High Court on the contractual relationship issue is instructive:

> In fact, when one is admitted to a college, there is an implied understanding that he shall not be arbitrarily dismissed therefrom. The required fees may be paid annually, and may be no more than fair fees for the advantages received by the student during the year, and yet it is clear that the fees for the first year are, in fact, paid and received with the understanding that the work of the year will not be made fruitless, a graduation and a degree made impossible, by an arbitrary refusal to permit further attendance.... There is no good reason why the law should not recognize, as growing out of these relations, a right of realtors resting in contract to be continued as students by the respondent.

156 Mich. at 99–100, 120 N.W. 589.

■ Other circuit courts have also agreed in the contractual nature of the relationship between a student and his university. *See, e.g., Corso v. Creighton University,* 731 F.2d 529, 531 (8th Cir.1984); *Williams v. Howard University,* 528 F.2d 658, 660 (D.C.Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976). Thus, we hold that an implied understanding that a student shall not be arbitrarily dismissed from his university is a property interest, resting in the contractual relationship between the parties, which can give rise to constitutional protections.

■ In *Stevens v. Hunt,* 646 F.2d 1168 (6th Cir.1981), this Court discussed the possibility that a university student may have a cause of action for the violation of substantive due process rights arising out of an academic dismissal from a university. In *Stevens,* this Court referred to the United States Supreme Court's decision in *Board of Curators v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), and said:

> The *Horowitz* decision still leaves open the question as to whether such a cause of action exists. Even if a cause of action does exist, it is clear, however, that arbitrary and capricious action on the part of the University officials would be a necessary element in order for plaintiffs to prevail.
>
> In order to establish such arbitrary and capricious action, the plaintiffs must show that there is no rational basis for the University's decision, or that the decision to dismiss was motivated by bad faith or ill will unrelated to academic performance.

646 F.2d at 1170 (citations omitted). Pursuant to the guidance provided by *Stevens,* we hold that the arbitrary and capricious deprivation of a constitutionally cognizable right does state a valid cause of action.

■ In the case at bar, the University of Michigan argues, in essence, that even if there were a contractual relationship between the parties, their action in dismissing Ewing is not arbitrary and capricious because the terms of any such contract would be defined solely by the University of Michigan Medical School Bulletin. This bulletin notes the broad discretionary power of the Promotion and Review Board. *See* Appellee's Brief at 25–27 (quoting from the University of Michigan Medical School Bulletin, 1975–77 ed. at 34; 1977–79 ed. at 36). This limited view of the terms of the contractual relationship between the parties ignores, however, substantial and uncontroverted evidence in the trial record that at the time Ewing took the NBME Part I, medical students were routinely given a second opportunity to pass it. Joint Appendix at 157–58. In fact, the evidence is undisputed that between 1975 and 1982, of the forty medical students who failed the NBME Part I on the first attempt, every one of these student was allowed a reexamination except Ewing. Joint Appendix at 110–11.

In light of this undisputed evidence of a consistent pattern of conduct, the finding of the district court that there was not "sufficient evidence to conclude that the defendants bound themselves either ex-

pressly or by a course of conduct to give Ewing a second chance to take Part I of the NBME examination," 559 F.Supp. at 800, is clearly erroneous. A University promotional pamphlet entitled "On Becoming a Doctor", stated that a qualified student would be given a second chance to take the NBME. This University publication is important because, irrespective of whether Ewing saw this pamphlet before taking the NBME Part I, this pamphlet memorialized the consistent practice of the medical school with respect to students who initially fail that examination.

There is substantial evidence in the record, and there is no district court finding to the contrary, that Ewing was a "qualified" student, as the University defined that term, at the time he sat for the NBME Part I. Joint Appendix at 298, 299. The evidence plainly demonstrates that the University treated Ewing in an arbitrary and capricious manner by not allowing him a second opportunity to take Part I of the NBME.

In sum, the evidence demonstrates that it was the consistent practice of the University of Michigan to allow a qualified medical student who initially failed the NBME Part I an opportunity for a retest. The evidence demonstrates that at the time Ewing sat for the NBME Part I he was a qualified student. The evidence also demonstrates that Ewing was the only University of Michigan medical student who initially failed the NBME Part I between 1975 and 1982, and was not allowed an opportunity for a retest. This action by the University of Michigan was arbitrary and capricious and must be reversed.

Accordingly, the decision of the district court is reversed and remanded with instructions that an order be issued compelling the University to allow Ewing to retake the NBME Part I. Further, should Ewing pass the NBME Part I, the district court is instructed to order that Ewing's registration in the Inteflex Program be reinstated.