**Lenore D. THOMAS, Plaintiff,**

v.

**Gordon GEE, et al., Defendants.**

**No. C–2–92–958.**

United States District Court, S.D. Ohio, E.D.

April 22, 1994.

---

Frederick Martin Gittes, Spater, Gittes & Terzian, Columbus, OH, for plaintiff.

Fred G. Pressley, Jr., Porter, Wright, Morris & Arthur, Columbus, OH, for defendants.

## MEMORANDUM AND ORDER

HOLSCHUH, Chief Judge.

Lenore Thomas, formerly a student at the Ohio State University College of Medicine, filed this action against various university officials under 42 U.S.C. § 1983. Thomas alleges that university administrators, trustees, and faculty members violated her federal and state rights when she was dismissed as a medical student in 1990. She has sued the defendants in their official capacities, seeking injunctive relief in the form of reinstatement into the College of Medicine, and has not requested monetary damages.

On April 8, 1993, defendants moved for judgment on the pleadings. Thomas then filed a second amended complaint. The parties requested a delay in the proceedings, but in December 1993, advised the Court that it would be necessary to rule on the motion. Thomas filed a responsive memorandum on January 7, 1994 and defendants replied on January 21, 1994. For the reasons set out below, the defendants' motion for judgment on the pleadings will be denied.

### I.

According to her complaint, Thomas is a black female who enrolled in the College of Medicine in September 1980. She began her third year of medical school in 1986, having had to repeat her first and second years. She claims that during this third year she received an unsatisfactory grade in her pediatric rotation despite having received favorable clinical evaluations. She also states that, although receiving satisfactory clinical evaluations in psychiatry, she failed the final exam and was required, contrary to the College of Medicine's rules, to complete another month of psychiatry rotation.

Shortly after taking a leave of absence from the College of Medicine in 1987, she was notified by the acting chairman of the "Med III–IV Committee" (the "Committee")

that the Committee had voted to consider dismissing her based on her "unsatisfactory grade in Psychiatry, the failure on the Pediatrics rotation, and a review of her entire academic record." Thomas claims that she was not given the "required opportunities" to correct these deficiencies. In October 1990, the Committee notified Thomas that it had voted to recommend her dismissal, despite her having taken and passed during her leave of absence a "nationally standardized examination" which according to Thomas, "is a measure of the student's success in acquiring the medical knowledge necessary to complete medical school." Thomas ultimately appealed her dismissal to the Committee on Academic Standing, but this appeal was denied.

Thomas then filed this section 1983 action against Dr. Gordon Gee, the President of the Ohio State University, trustees of the university, the Dean of the College of Medicine, faculty members of the Committee, and another faculty member of the College of Medicine. In her amended complaint, Thomas charges that the defendants violated her substantive due process property and liberty rights and her right to equal protection of the laws under both the United States and Ohio constitutions. Thomas contends that the defendants' actions were arbitrary and capricious, and taken for discriminatory purposes because of her race. She has also brought a state law breach of contract claim.

Prior to Thomas' latest amendment to her complaint, the defendants had moved for judgment on the pleadings, arguing (1) that Thomas has not stated a valid claim for relief under either the federal or Ohio constitutions for a violation of her substantive due process and equal protection rights; and (2) because the constitutional claims must be dismissed, the Court should decline to exercise jurisdiction over the remaining state law claim for breach of contract. In their motion, the defendants also moved for dismissal of claims Thomas brought directly under the substantive due process and equal protection clauses of the United States Constitution and for dismissal of her section 1983 equal protection claim because Thomas had not specifically

alleged intentional discrimination. When Thomas amended her complaint, she eliminated her independent constitutional claims, and also pleaded that defendants intentionally discriminated against her. Consequently, these latter issues are no longer before the Court. The defendants' remaining arguments in support of their motion for judgment on the pleadings are not affected by the amended complaint.

## II.

■ A motion for judgment on the pleadings attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir.1979). In ruling upon such motion, the Court must accept as true all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973). It is with this standard in mind that the motion for judgment on the pleadings must be decided.

## III.

■ First, defendants assert that Thomas has not stated an equal protection claim because she does not allege discrimination pursuant to a statute or regulation. They contend that "*ad hoc*" acts of discrimination not authorized by a statute or regulation are simply not actionable under the equal protection clause in a section 1983 suit. The basis for this argument appears to be the language of the amendment itself, which speaks in terms of "equal protection of the laws," and upon *dictum* which appears in *Hatcher v. Greater Cleveland Regional Transit Auth.*, 746 F.Supp. 679 (N.D.Ohio 1989), *aff'd*, 911 F.2d 732 (6th Cir.1990) (table). This argument, which, if adopted, would eliminate the basis for a substantial majority of suits based upon the equal protection clause, is, in the view of this Court, completely without merit.

*Hatcher* involved a suit by an employee of the Cleveland Regional Transit Authority, a political subdivision of the State of Ohio, for discriminatory discharge. Hatcher asserted claims under, *inter alia*, Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. The Court granted summary judgment to the defendant on the Title VII claim, concluding that Hatcher was not able to demonstrate that the justification for his discharge advanced by his employer was a pretext for racial discrimination. That holding was sufficient to dispose of the section 1983 claim as well, since the standard for judging discrimination under parallel Title VII and section 1983 claims is the same. *See Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 483 (6th Cir.1989).

However, the Court went on to dismiss Hatcher's equal protection claim on separate grounds, noting that he had not challenged either the Ohio statutes which had established the Cleveland RTA or any of its internal operating rules. Characterizing Hatcher's claim of discriminatory discharge as a challenge to "*ad hoc* actions taken ... against him personally," the Court, relying on the proposition that "[a]n elementary prerequisite to equal protection analysis ... is that there be a legislative or administrative scheme or state-promulgated rule which is subject to judicial review," granted summary judgment on the section 1983 claim. *Hatcher*, 746 F.Supp. at 689–90.

■ The premise relied upon by the *Hatcher* court, that an equal protection claim must involve a challenge to a "legislative or administrative scheme or state-promulgated rule," is not a valid premise. As the United States Supreme Court stated in *Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 99 S.Ct. 2941, 61 L.Ed.2d 666 (1979):

[T]he Equal Protection Clause was aimed at all official actions, not just those of state legislatures. "[No] agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, ... denies or takes away the equal protection of the laws ... violates the constitutional inhibition; and as he acts in the name and for the State, and is clothed with the

State's power, his act is that of the State." *Ex parte Virginia,* 100 U.S. [(10 Otto)] 339, 347, 25 L.Ed. 676 (1880). Thus, in *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the discriminatory application of an ordinance fair on its face was found to be unconstitutional state action. Even actions of state agents that may be illegal under state law are attributable to the State. *United States v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). *Id.* at 443 U.S. 457 n. 5, 99 S.Ct. at 2946 n. 5. Indeed, if the Court had followed the rationale of *Hatcher,* there would have been no desegregation of school systems pursuant to the equal protection clause in any state where segregation was the result of action or inaction by a local school board rather than the result of a mandate contained in a statute or regulation enacted by the state itself. Thus, the fact that there is no statute, administrative regulation or state promulgated rule that would authorize the defendants to discriminate against medical students based upon their race has no effect on Thomas' ability to challenge her allegedly racially-motivated dismissal under the equal protection clause. The so-called *"ad hoc"* actions of the state defendants, even if not in violation of a state statute, administrative regulation or rule, are still subject to equal protection scrutiny by this Court. *Penick,* 443 U.S. at 457 n. 5, 99 S.Ct. at 2946 n. 5. While it is true that in order to establish plaintiff's claim of a denial of equal protection by the *ad hoc* actions of the defendants, plaintiff must establish that the defendants' actions were prompted by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), this requirement concerns only the intent of the defendants and has no bearing on the fact that their actions were of an *ad hoc* nature. *See also Swift v. United States,* 649 F.Supp. 596, 602 (D.D.C.1986) (rejecting the defendant's "rather remarkable argument that because this case, does not involve a legislative classification, but instead a single, ad hoc decision, the equal protection clause is inapplicable").

In addition to the precedent cited in *Columbus Bd. of Educ. v. Penick, supra,* the Supreme Court, in *Home Telephone & Telegraph Co. v. City of Los Angeles,* 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913), held that, for purposes of the Fourteenth Amendment's due process guarantees:

> [T]he Amendment contemplates the possibility of state officers abusing the powers lawfully conferred upon them by doing wrongs prohibited by the Amendment. In other words, the Amendment ... proceeds not merely upon the assumption that states acting in their governmental capacity in a complete sense may do acts which conflict with its provisions, but, also conceiving ... that state powers might be abused by those who possessed them and as a result might be used as the instrument for doing wrongs....

*Id.* at 288, 33 S.Ct. at 315.

Nearly fifty years after *Home Telephone,* the Supreme Court again affirmed the broad reach of section 1983. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part by Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The question before the *Monroe* court was "whether Congress, in enacting ... [§ 1983], meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." *Id.,* 365 U.S. at 172, 81 S.Ct. at 476. Answering that question in the affirmative, the Court rejected the argument that " 'under color of' enumerated state authority excludes acts of an official ... who can show no authority under state law, state custom, or state usage to do what he did." *Id. Monroe* continues to guide federal courts in resolving section 1983 liability questions. *See, e.g., Cassady v. Tackett,* 938 F.2d 693, 695 (6th Cir.1991) (citation omitted) ("[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State").

The Court of Appeals for the Sixth Circuit routinely entertains cases where a state actor's *ad hoc* conduct is alleged to violate a plaintiff's equal protection rights. For exam-

ple, in *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir.1988), the court affirmed a judgment against two university administrators who were found by the jury to have discriminatorily denied the plaintiff tenure by "imposing the additional book requirement, in distorting the outside evaluator process, and in ultimately influencing the opinions and votes of the other members of the [tenure committee]." *Id.* at 1327. Nothing in *Gutzwiller* suggests that these actions were undertaken pursuant to any official university policy or legislative mandate. In fact, by "distorting the outside evaluator process," the administrators must necessarily have been acting in an *ad hoc* manner, and yet their actions were found to be violative of the plaintiff's equal protection rights. *See also Risinger v. Ohio Bureau of Workers' Compensation, supra* (recognizing a hostile work environment claim under section 1983).

The Court does acknowledge that *Hatcher* was affirmed by the Court of Appeals in an unpublished opinion. *See* 1990 WL 120772, 1990 U.S.App. LEXIS 14534. The brief unpublished opinion, however, recites that *Hatcher* brought claims under only Title VII and 42 U.S.C. § 1981, and affirmed the grant of summary judgment on the merits on the Title VII claim as well as the retroactive application of *Patterson v. McClean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), to Hatcher's section 1981 claim. In light of the unbroken line of persuasive Supreme Court authority cited above, the Court believes that the affirmance of *Hatcher* should not be construed even as implicit approval of the *Hatcher dictum* concerning the reach of the equal protection clause. The only case which appears to have relied upon *Hatcher*'s language, *Bettio v. Village of Northfield*, 775 F.Supp. 1545 (N.D.Ohio 1991), is unpersuasive for similar reasons.

Essentially, defendants assert the novel proposition that, merely by refraining from enacting statutes, rules, or regulations which are discriminatory on their face, a state could insulate itself from equal protection challenges to the actions of its agents even if those actions are blatantly discriminatory. The Court declines to accept defendants' in-

vitation to alter the law of equal protection in such a radical fashion, and therefore concludes that Thomas' claim under the equal protection clause is sufficient to withstand the motion for judgment on the pleadings.

### IV.

The defendants also argue that they are entitled to judgment on the pleadings on Thomas' claims that she was deprived of her liberty and property interests in violation of the substantive due process clause of the Fourteenth Amendment. The defendants contend that such claims are not cognizable in the context of an academic dismissal. Alternatively, they maintain that even if she has stated valid substantive due process claims, they should be dismissed because she has an adequate remedy under state law. Finally, they argue that her claim for deprivation of a protected liberty interest should be dismissed as being inartfully pleaded and untimely filed.

### A.

With respect to the due process clause of the Fourteenth Amendment, the Sixth Circuit has said:

> Courts have analyzed § 1983 actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process. Violations of substantive due process are further divided into two kinds: (1) deprivation of a particular constitutional guarantee and (2) actions that "government officials may not take no matter what procedural protections accompany them," alternatively known as actions that "shock the conscience."

*Braley v. City of Pontiac*, 906 F.2d 220, 224 (6th Cir.1990) (citations omitted).

Plaintiff makes no claim that she has been denied procedural due process. Indeed, the Supreme Court has said that—even assuming a student in a state university has either a property interest or liberty interest to be protected—no due process hearing is required before a student is dismissed for academic reasons. *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 n. 3, 98 S.Ct. 948, 953 n. 3, 55 L.Ed.2d 124 (1978).

Plaintiff in this case certainly had as much process—if not more—afforded to her than the plaintiff in *Horowitz*.

With regard to plaintiff's claim that she has been denied substantive due process, the evaluation of her claim in this regard is more difficult. As the Sixth Circuit has said, in discussing the substantive due process clause in relation to the equal protection clause:

> Substantive due process, a much more ephemeral concept [than equal protection of the laws] protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as those rights which are "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), *overruled on other grounds, Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available. *See, e.g., Regents of the University of Michigan v. Ewing,* 474 U.S. 214, [223] 106 S.Ct. 507, 512, 88 L.Ed.2d 523 (1985); *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 4–5 (7th Cir.1974).

*Gutzwiller v. Fenik,* 860 F.2d 1317, 1328 (6th Cir.1988).

■ Freedom to pursue the basic activities of life—including the pursuit of an education—without governmental discrimination based on race is a liberty interest protected by the substantive due process clause of the Fourteenth Amendment. This was made clear by the Supreme Court in *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). That case involved the validity of segregation in the public schools of the District of Columbia. The legal problem was that the Fifth Amendment, applicable in the District of Columbia, does not have an equal protection clause as does the Fourteenth Amendment which applies only to the states.

The Court, therefore, turned to the due process clause of the Fifth Amendment. The Court said:

> But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process.
>
> Classifications based solely upon race must be scrutinized with particular care, since they are contrary to our traditions and hence constitutionally suspect. As long ago as 1896, this Court declared the principle "that the Constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the General Government, or by the States, against any citizen because of his race." And in *Buchanan v. Warley,* 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, the Court held that a statute which limited the right of a property owner to convey his property to a person of another race was, as an unreasonable discrimination, a denial of due process of law.
>
> Although the Court has not assumed to define "liberty" with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective. Segregation in public education is not reasonably related to any proper governmental objective, and thus it imposes on Negro children of the District of Columbia a burden that constitutes an arbitrary deprivation of their liberty in violation of the Due Process Clause.

*Id.* at 347 U.S. 499–500, 74 S.Ct. at 694–95.

This Court sees no basis for any distinction in the Court's interpretation of substantive due process under the Fifth Amendment and substantive due process under the Fourteenth Amendment. Indeed, the Sixth Circuit, in *Gutzwiller,* tracked the Supreme

Court's reasoning in its construction of substantive due process under the Fourteenth Amendment.

> While the concepts of equal protection and substantive due process are defined differently, they are, in actuality, very similar concepts. Both stem from our American ideals of fundamental fairness and both enmesh the judiciary in substantive review of governmental action. The spheres of protection offered by the two concepts are not, to be sure, coterminous. However, they will overlap in certain situations so that a violation of one will constitute a violation of the other.

*Gutzwiller*, 860 F.2d at 1328–29.

It is important to remember that not all rights are protected by substantive due process. As Justice Powell stated in his concurring opinion in *Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985):

> Even if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, *Board of Regents v. Roth*, 408 U.S. 564, 577, [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972), substantive due process rights are created only by the Constitution. The history of substantive due process "counsels caution and restraint." *Moore v. East Cleveland*, 431 U.S. 494, 502, [97 S.Ct. 1932, 1937, 52 L.Ed.2d 531] (1977) (opinion of POWELL, J., for a plurality). The determination that a substantive due process right exists is a judgment that " 'certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.' " *Ibid.*, quoting *Poe v. Ullman*, 367 U.S. 497, 543, [81 S.Ct. 1752, 1776, 6 L.Ed.2d 989] (1961) (Harlan, J., dissenting). In the context of liberty interests, this Court has been careful to examine each asserted interest to determine whether it "merits" the protection of substantive due process. *See, e.g., East Cleveland, supra; Roe v. Wade*, 410 U.S. 113, [93 S.Ct. 705, 35 L.Ed.2d 147] (1973); *Griswold v. Connecticut*, 381 U.S. 479, [85 S.Ct. 1678, 14 L.Ed.2d 510] (1965). "Each new claim to [substantive due process] protection must be considered against a background of Constitutional purposes, as they have been rationally perceived and historically developed." *Poe, supra*, [367 U.S.] at 544, [81 S.Ct. at 1777] (Harlan, J., dissenting).
>
> The interest asserted by respondent—an interest in continued enrollment from which he derives a right to retake the NBME—is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution. It certainly is not closely tied to "respect for the teachings of history, solid recognition of the basic values that underlie our society, and wise appreciation of the great roles that the doctrines of federalism and separation of powers have played in establishing and preserving American freedoms," *Griswold, supra*, [381 U.S.] at 501, [85 S.Ct. at 1690] (Harlan, J., concurring in judgment). For these reasons, briefly summarized, I do not think the fact that Michigan may have labeled this interest "property" entitles it to join those other, far more important interests that have heretofore been accorded the protection of substantive due process. *Cf. Harrah Independent School District v. Martin*, 440 U.S. 194, [99 S.Ct. 1062, 59 L.Ed.2d 248] (1979).

*Id.* 474 U.S. at 229–30, 106 S.Ct. at 515–16 (Powell, J., concurring).

### B.

With the above principles and teachings of the Supreme Court and the Sixth Circuit Court of Appeals in mind, we turn to a consideration of what property interest or liberty interest plaintiff contends has been abridged by improper state action in this case.

Plaintiff alleges that she had a property interest in continuing her medical education. Property interests protected by the due process clause are "defined by existing rules or understandings that stem from an independent source such as state law." *Board of*

*Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). It is necessary then to turn to the law of Ohio to see whether the state, by contract or otherwise, has conferred upon plaintiff a property right in her continued education.[1]

■ Plaintiff relies upon Ohio Rev.Code § 3345.06, an Ohio statute dealing with requirements of high school students for entrance to a state college or university. The statute provides:

**Entrance requirements of high school graduates.** A graduate of the twelfth grade shall be entitled to admission without examination to any college or university which is supported wholly or in part by the state, but for unconditional admission may be required to complete such units not included in his high school course as may be prescribed, not less than two years prior to his entrance, by the faculty of the institution.

This section does not deny the right of a college of law, medicine, or other specialized education to require college training for admission, or the right of a department of music or other art to require particular preliminary training or talent.

Plaintiff contends that this statute confers "a fundamental right to enrollment at a publicly-funded university, including a medical college." (Plaintiff's memorandum contra defendant's Rule 12(c) motion, p. 5.) The Court does not so view this statute. While it indeed may confer an entitlement to enter a state college or university without being required to take an entrance examination, it does nothing more than that. It clearly does not, in this Court's view, confer an entitlement or a property right to a continued education after admission.

■ Plaintiff also relies on *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), a case involving the imposition of disciplinary action to Ohio high school students. In determining whether the students had a constitutional interest protected by procedural due process, the court relied upon Ohio statutes which provide for a free education to all residents between five and twenty-one years of age[2] and a compulsory attendance law that requires attendance at a school year of not less than thirty-two weeks.[3]

The Court found that, "having chosen to extend the right of an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Id.* at 574, 95 S.Ct. at 736. The Court concluded that these statutes conferred on plaintiffs "a legitimate entitlement to a public education as a property interest protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574, 95 S.Ct. at 736. The Court also believed that a liberty interest was implicated by reason of the stigmatizing effect of disciplinary measures on the students' standing with their fellow pupils and their teachers as well as on later opportunities for higher education and employment. *Id.* at 574–75, 95 S.Ct. at 736–37.

*Goss* is clearly distinguishable. It is based on Ohio statutes that guarantee a free public

---

1. Plaintiff's reliance on *Regents of the Univ. of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) is misplaced. In *Ewing,* the Supreme Court, for the purpose of that decision, noted that the Board of Regents admitted that under Michigan law, the plaintiff may have enjoyed a property right and interest in his continued enrollment in the Inteflex Program, 474 U.S. at 223 n. 8, 106 S.Ct. at 512 n. 8, and "accept[ed] the university's invitation to 'assume the existence of a constitutionally protectible property right in [Ewing's] continued enrollment.'" *Id.* at 223, 106 S.Ct. at 512. Furthermore, there was an antiquated race discrimination decision by the Michigan Supreme Court in

1909 in which the state court held that "when one is admitted to a college, there is an implied understanding that he shall not be arbitrarily dismissed therefrom." *Ewing,* 474 U.S. at 222 n. 7, 106 S.Ct. at 511 n. 7 (quoting *Booker v. Grand Rapids Medical College,* 156 Mich. 95, 99–100, 120 N.W. 589, 591 (1909)). As Justice Powell noted, the claimed property right in that case was "dubious at best." *Ewing,* 474 U.S. at 229, 106 S.Ct. at 515.

2. Ohio Rev.Code §§ 3313.48 and 3313.64.

3. Ohio Rev.Code § 3321.04.

education through high school and compel the student's attendance at school. There are no similar statutes that confer any right to a free graduate or professional school education in Ohio. Furthermore, *Goss* involved disciplinary action taken against students, not the failure of a student to meet academic standards, a distinction noted by the Supreme Court in *Horowitz*, 435 U.S. at 85–91, 98 S.Ct. at 952–56:

> Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.

*Id.* at 90, 98 S.Ct. at 955. Finally, *Goss* involved a pure question of procedural due process, not substantive due process, and, as noted earlier, plaintiff in this case makes no claim that she has been denied procedural due process.

The only Ohio case which appears factually similar to the present case is *Bleicher v. University of Cincinnati College of Medicine*, 78 Ohio App.3d 302, 604 N.E.2d 783 (1992).[4] In the *Bleicher* case, the plaintiff was dismissed from medical school for poor academic performance. He brought an action against the college in the Ohio Court of Claims, claiming a violation of his rights under the constitutions of the United States and the state of Ohio and also claiming a breach of contract. From an adverse decision in the Court of Claims, he appealed to the court of appeals. The appellate court held that the Court of Claims had no jurisdiction to consider his constitutional claims. With regard to the breach of contract claim, the court said:

> It is axiomatic that "... when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual

in nature." *Behrend v. State* (1977), 55 Ohio App.2d 135, 139, 9 O.O.3d 280, 282, 379 N.E.2d 617, 620. In addressing the issue of whether such contract has been breached, the trier of fact appropriately looks to the terms of the contract as found in the college guidelines supplied to students. *See Embrey v. Central State Univ.* (Oct. 8, 1991), Franklin App. No. 90AP–1302, unreported, 1991 WL 224228, citing *Smith v. Ohio State Univ.* (1990), 53 Ohio Misc.2d 11, 13, 557 N.E.2d 857, 859–860. However, where the contract permits, the parties may alter its terms by mutual agreement, and any additional terms will supersede the original terms to the extent the two are contradictory. *Ottery v. Bland* (1987), 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654–655. In interpreting the contract, the trial court was required to "... attempt to harmonize all the provisions rather than produce conflict in them...." *Ottery, supra,* at 87, 536 N.E.2d at 654, citing *Farmers Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834.

> In addition to these considerations, the trial court was required to defer to academic decisions of the college unless it perceived "... such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment...." *Regents of the Univ. of Mich. v. Ewing* (1985), 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523, 532. The standard of review is not merely whether the court would have decided the matter differently but, rather, whether the faculty action was arbitrary and capricious. *See Bd. of Curators of Univ. of Mo. v. Horowitz* (1978), 435 U.S. 78, 91, 98 S.Ct. 948, 955–56, 55 L.Ed.2d 124, 135–136.

*Id.* 78 Ohio App.3d at 308, 604 N.E.2d at 787.

There is thus some authority in Ohio that there is a contractual relationship between a student and a college in which the student is

---

4. The parties also refer to *Grove v. Ohio State Univ. College of Veterinary Medicine*, 424 F.Supp. 377 (S.D.Ohio 1976), a case involving the college's denial of admission to the plaintiff. The court found that plaintiff did not have any property interest in being admitted to the college, but

possessed a liberty interest which was not violated by the evaluation procedures employed by the college. The case did not involve the question of whether a college student, once admitted, has a property right or liberty interest in his or her continued education.

enrolled, and under Ohio law the right to contract is a property interest within the protection of the Fourteenth Amendment. *Joseph Bros. v. Brown*, 65 Ohio App.2d 43, 46, 19 O.O.3d 31, 32, 415 N.E.2d 987, 990 (1979).[5] Even assuming that a college student in Ohio can establish such a contract right, the result, at best, would be a prohibition against state actors depriving the student of that right without procedural due process. As the Sixth Circuit has observed:

> Most, if not all, state-created ·contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " (Citations omitted.) It protects those interests, some yet to be enumerated, "implicit in the concept of ordered liberty" (citations omitted) like personal choice in matters of marriage and the family (citations omitted).... Routine state-created contractual rights are not "deeply rooted in this Nation's history and tradition," and, although important, are not so vital that "neither liberty nor justice would exist if [they] were sacrificed." *Bowers v. Hardwick*, 478 U.S. 186, 191–94, 106 S.Ct. 2841, 2844–46, 92 L.Ed.2d 140 (1986) (quoting *Moore v. City of East Cleveland*, 431 U.S. at 503, 97 S.Ct. at 1937–38 and *Palko v. Connecticut*, 302 U.S. at 326, 58 S.Ct. at 152).

*Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir.1990).

In the present case, plaintiff's property interest, if any, is based on a state-created contractual right, and while it may arguably be protected by the procedural due process aspect of the constitutions of the United States and the state of Ohio, plaintiff in this case, as noted, does not claim any violation of her procedural due process rights. Plaintiff's alleged property interest in continued enrollment in the college of medicine is not protected, in the view of this Court, by the substantive due process aspect of the federal or state constitutions.

Plaintiff, then, must rely upon some liberty interest to be protected against improper state action. Furthermore, a liberty interest must be "so rooted in the traditions and conscience of our people as to be ranked as fundamental" and implicitly protected by the Constitution.

■ In her complaint, plaintiff alleges that she has a liberty interest in continuing her medical education. This Court disagrees. The right to pursue an education, while obviously important, is not a fundamental right implicitly protected by the Constitution and subject to the protection of substantive due process against arbitrary governmental action. Indeed, the Supreme Court has expressly held that the right to an education is not a fundamental right protected by the Constitution. *San Antonio Indep. Sch. Dist. v. Rodriquez*, 411 U.S. 1, 33–35, 93 S.Ct. 1278, 1296–98, 36 L.Ed.2d 16 (1973).

In *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the Supreme Court, after rejecting a procedural due process claim of a student who had been dismissed from medical school, did not decide whether the plaintiff had a substantive due process claim. While noting that some lower courts have implied in *dictum* the existence of a claim if shown that the academic dismissal from a state institution was clearly arbitrary and capricious, the Supreme Court did not decide the question. Instead, it held that even assuming such a standard, there was no showing of arbitrariness or capriciousness in that case. *Horowitz*, 435 U.S. at 91–92, 98 S.Ct. at 955–57.[6]

---

**5.** It is somewhat surprising to find the plaintiff referring to the court's finding in *Bleicher* as *dictum.* "The Court's dicta to the effect that the relationship between a student and university 'may reasonably be construed as being contractual in nature' is not persuasive on the question of whether or not that relationship may also give rise to a constitutional claim." (Plaintiff's memorandum contra defendants' Rule 12(c) motion, pp. 15–16.)

**6.** With regard to plaintiff's claim of discrimination because of plaintiff's sex, religion, and physi-

It is important, however, to remember the admonition of the Supreme Court in *Horowitz:*

> Courts are particularly ill-equipped to evaluate academic performance. The factors discussed in Part II with respect to procedural due process speak *a fortiori* here and warn against any such judicial intrusion into academic decisionmaking.

435 U.S. at 92, 98 S.Ct. at 956.

■ While, in this Court's view, plaintiff has no constitutionally protected liberty interest in remaining a student in the medical college, the inquiry in this case does not end with this conclusion. Plaintiff has also alleged that government actors have discriminated against her because of her race in her effort to obtain a medical degree. *This* claim, in this Court's view, implicates not only the equal protection clause of the Fourteenth Amendment but also the substantive due process clause of that amendment. Put another way, plaintiff is asserting a liberty interest in not being terminated from her educational studies because of her race. This interest—the right to pursue her education free of racial discrimination—is a fundamental right not just implicitly protected by the Constitution but expressly protected by the equal protection clause. This, then, is one of those cases referred to by the Sixth Circuit in which the spheres of equal protection and substantive due process "overlap ... so that a violation of one will constitute a violation of the other." *Gutzwiller,* 860 F.2d at 1329. In *Gutzwiller,* a teacher at a public university claimed that she had been denied tenure because of her sex. The Court of Appeals said:

> ... [F]or a tenure decision at a public university to be made on the basis of an individual's sex not only constitutes the kind of invidious discrimination prohibited by the equal protection clause but also constitutes an arbitrary and capricious deprivation of the individual's liberty interest in not being terminated from governmental employment for a constitutionally impermissible purpose. *See, e.g., Clark [v. Whit-*

*ing],* 607 F.2d [634] 638–39 [(4th Cir. 1979)]; *Jeffries,* 492 F.2d at 4–5 & n. 12. 860 F.2d at 1329.

Similarly, in the present case, to paraphrase the Sixth Circuit:

> For a dismissal decision at a public university to be made on the basis of a student's race not only constitutes the kind of invidious discrimination prohibited by the equal protection clause but also constitutes an arbitrary and capricious deprivation of the individual's liberty interest in not being dismissed from the university for a constitutionally impermissible purpose.

Plaintiff's claim of a denial of substantive due process, as set forth in the complaint, is, in the Court's view, inaccurately stated. She alleges that:

> The dismissal and grading of the plaintiff by defendants, effectively foreclosed any opportunity for the plaintiff to complete her medical education and pursue her chosen occupation in medicine as no other school has, or will, accept her as a student in light of the circumstances of her dismissal.
>
> Information about the plaintiff's grades and dismissal have been communicated and will continue to be communicated to other institutions where the plaintiff has sought to resume her medical education.

Second Amended Complaint, ¶¶ 43, 44.

First, as discussed above, plaintiff has no constitutionally protected liberty interest in remaining enrolled in the college of medicine. Her protected liberty interest is in not being dismissed because of her race.

Second, if plaintiff can establish that she was in fact dismissed because of her race, the violation of her right to substantive due process is complete, and it is not necessary to allege or establish that information about her grades and dismissal have been communicated to other institutions.

The language used by plaintiff apparently is derived from cases (often employment cases) involving a claimed liberty interest in

---

cal appearance, the Court simply noted the District Court's finding of fact that there was no evidence plaintiff was evaluated differently be-

cause of her sex, religion or physical appearance. *Horowitz,* 435 U.S. at 92 n. 7, 98 S.Ct. at 956 n. 7.

not losing some tangible government benefit as a result of defamatory or stigmatizing conduct by a government agent in violation of plaintiff's right to procedural due process. In *Mertik v. Blalock*, 983 F.2d 1353 (6th Cir.1993), the court, referring to *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), said:

> *Siegert* thus underscores two important points: (1) a plaintiff asserting a claim for deprivation of liberty without due process of law must allege the loss of a governmental right, benefit or entitlement; and (2) the loss must occur at the same time as the claimed stigmatizing publication.

983 F.2d at 1363.

It is clear that the court in *Mertik* was referring to procedural due process, having earlier determined that plaintiff had not claimed any denial of "a right which has special and independent constitutional protection." *Mertik*, 983 F.2d at 1362. In the present case, procedural due process is not involved, and, with respect to substantive due process the Court finds that plaintiff has no property interest or liberty interest in her continued enrollment in the college of medicine that is protected by substantive due process under the United States Constitution. She does have, however, both an equal protection right and a substantive due process right not to be denied continued enrollment in the college of medicine because of her race.

## V.

Defendants' other arguments in support of their motion for judgment on the pleadings are easily resolved.

■ Defendants contend that, with respect to plaintiff's claim for a deprivation of her liberty interest, her complaint is facially deficient because she has failed to plead the falsity of the information disseminated by defendants concerning her grades and her dismissal. The Court has held that the only liberty interest of plaintiff in her continued enrollment is the right not to be discriminated against because of her race. This has nothing to do with any stigmatizing effect her grades and dismissal may have on her.

That is simply not an essential element of plaintiff's claim. While plaintiff's description of her alleged liberty interest is not one which this Court believes she possesses, the allegations of the complaint, construed in the light most favorable to plaintiff, are sufficient to allege a violation of the type of liberty interest entitled to constitutional protection. Furthermore, it is not the type of interest which should be relegated to the state court on the basis that plaintiff has an adequate remedy at law in that court. *Cf. Ramsey v. Board of Education*, 844 F.2d 1268 (6th Cir. 1988) (involving a state breach of contract).

■ Defendants also contend that plaintiff's substantive due process liberty interest should be dismissed as barred by the statute of limitations. Plaintiff amended her complaint to include her liberty interest claim more than two years after her dismissal, and a section 1983 plaintiff must bring her action within two years of the events giving rise to the claim. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir.1989). However, Fed. R.Civ.P. 15(c) provides that:

> An amendment of a pleading relates back to the date of the original pleading when
> . . .
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

The rule clearly applies to plaintiff's substantive due process liberty claim as defined by the Court. The same alleged conduct of the defendants which would support plaintiff's equal protection claim also supports her substantive due process claim. Therefore, defendants' statute of limitations argument is not well-taken.

## VI.

■ The defendants have also moved for judgment on the pleadings with respect to plaintiff's substantive due process and equal protection claims arising under the Ohio Constitution. As the defendants point out, the United States Constitution and the Ohio Constitution impose similar restraints upon the government with respect to a citizen's

right to due process, *Andres v. City of Perrysburg,* 47 Ohio App.3d 51, 54, 546 N.E.2d 1377, 1382 (1988) (citation omitted), and to equal protection under the laws, *Kinney v. Kaiser Aluminum & Chem. Corp.,* 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 207, 322 N.E.2d 880, 882 (1975). Accordingly, because the defendants cannot be granted judgment on the pleadings with respect to Thomas' federal constitutional claims, her state constitutional claims remain viable and will also not be dismissed.

## VII.

Plaintiff's state law breach of contract claim fails to allege the terms and conditions of the alleged contract between plaintiff and the college, other than that it "[includes] contractual promises to provide the plaintiff equal educational opportunities without regard to her race." Second Amended Complaint, ¶ 41. Defendants' motion for judgment on the pleadings does not challenge the sufficiency of plaintiff's breach of contract claim, only that this Court should decline to exercise pendent jurisdiction over it in the event the Court should grant defendants' motion to dismiss the federal claims. Because the Court is not dismissing plaintiff's federal claims, the Court will retain the pendent state law breach of contract claim.

## VIII.

The Court emphasizes that its decision is based solely on defendants' motion for judgment on the pleadings and the Court being required to accept as true all well-pleaded material allegations of the second amended complaint, including the allegations that the defendants intentionally discriminated against plaintiff because of her race. Indeed, it is because of these allegations that the second amended complaint has survived the challenge of defendants' motion. Absent these allegations, this case would fall clearly within the admonition of the Supreme Court that warns against judicial intrusion into academic decisionmaking regarding a student's performance. *Horowitz,* 435 U.S. at 92, 98 S.Ct. at 956.

The Court necessarily must assume that counsel for plaintiff made a reasonable inqui-

ry and that to the best of his knowledge, information and belief, the allegations are well grounded in fact. Fed.R.Civ.P. 11. This same assumption applies to counsel's joinder of the President of the Ohio State University, the Board of Trustees of that university and every individual member of that Board, the Dean of the College of Medicine and twenty (20) faculty members as defendants in this action. However, since defendants have not directly raised this issue, there is no need to address it further in the context of this opinion.

## IX.

For the above reasons, defendants' motion for judgment on the pleadings is **DENIED.**

**IT IS SO ORDERED.**