**Bohdan Jan SZEJNER, Appellant,**

v.

**UNIVERSITY OF ALASKA, Appellee.**

Nos. S–7707, S–7708.

Supreme Court of Alaska.

Sept. 12, 1997.

Rehearing Denied Nov. 14, 1997.

---

Bohdan Jan Szejner, pro se, Anchorage, Appellant.

Mark E. Ashburn, Ashburn & Mason, Anchorage, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

These consolidated appeals involve decisions by the University of Alaska, Anchorage, to deny Bohdan J. Szejner admission to a graduate program and to sanction him for a violation of the Student Code of Conduct. The superior court upheld the university's decisions. We affirm.

## II. FACTS AND PROCEEDINGS

Bohdan J. Szejner was admitted to graduate study at the University of Alaska, Anchorage (UAA), on September 22, 1987. In August 1988 his thesis committee approved his candidacy for a Master of Arts degree in English. On April 25, 1989, the thesis committee reviewed Szejner's draft thesis and concluded that it did "not indicate satisfactory progress toward the degree." While one committee member apparently believed that the draft deserved a grade of "F", another member thought that Szejner should be al-

lowed a second chance. The committee, after consulting with Professor Michael Turner of UAA's Advising and Counseling Center, agreed on May 3 to allow Szejner until May 18 to submit an outline of chapters, a sample chapter analyzing plays by Shakespeare, and a bibliography. Szejner submitted the requested materials to the committee, and the committee, after considerable discussion, agreed on a grade of "C" for Szejner's thesis and independent research for the semester.

As a consequence of receiving this grade, the state student loan program determined that Szejner's grade point average for the semester made him ineligible to continue to receive student loans. On May 30 Szejner sought Turner's help. The meeting quickly deteriorated, and security officers eventually restrained Szejner and escorted him from the campus. Although the parties dispute the details, it is clear that Szejner became upset and lost his composure. UAA summarily suspended Szejner on May 31 pending a hearing.

The vice chancellor for student services, Larry K. Kingry, held a disciplinary hearing to give Szejner the chance to explain and comment on the incident in Turner's office. Kingry concluded that Szejner had violated the Student Code of Conduct and wrote to him that his "threatening behavior to the faculty and staff of the University and their refusal to continue to work with [him]" made it impossible for him to continue with his academic program at that time. Kingry expelled Szejner until at least May 1, 1990. Szejner filed a grievance, and a hearing panel, after an adversarial hearing, affirmed Kingry's decision. The hearing panel's decision was affirmed by UAA Chancellor Donald Behrend and UAA President Donald D. O'Dowd.

Szejner applied for readmission on October 12, 1990, and a hearing was held to consider the application. The hearing committee recommended that Szejner not be readmitted to UAA. Jerome B. Komisar, the president of the University of Alaska, adopted this recommendation and placed conditions upon any future request by Szejner for readmission, including a request that Szejner "demonstrate by objective evidence that [he] successfully maintained an ongoing psychological counseling program along the lines recommended by [his psychiatrist]."

A hearing was held on June 26, 1991, to consider Szejner's second readmission request. The hearing committee recommended that UAA readmit him on a probationary status to complete his graduate program on the condition that he continue his psychotherapy. President Komisar adopted this recommendation. Szejner received his degree in August 1994.

After receiving his degree, Szejner applied to the Teacher Certification Program in English at UAA. The graduate admissions committee of the school of education denied his application. Alexander McNeill, the dean of the school, cited two reasons for this decision:

1.0  President Komisar's letter to you of July 16, 1991 clearly states that "You are readmitted to the Master of Arts in English program for the sole purpose of completing your graduate degree program under the non-thesis (directed readings) option on page 193 of the 1991–92 UAA catalog." The President's letter essentially prohibits your admission to other programs at UAA.

2.0  The committee has carefully weighed your student record at UAA. On the basis of that record, it is the committee's professional judgment that you have not demonstrated the socially responsible behaviors that are necessary for admission into a teacher certification program.

McNeill stated that the decision was "an academic decision and, as such, is subject to the academic appeals process."

Szejner appealed the decision to Dr. Doug Hammer, associate vice chancellor for research and graduate programs. Hammer met with Szejner and others, reviewed Szejner's academic record, and upheld McNeill's decision. He also noted in his letter to Szejner that in his own professional judgment Szejner "would not be well served by being admitted into a program" because of his doubts as to whether Szejner could complete the program and receive the recom-

mendation required for certification.[1] However, President Komisar allowed Szejner to enroll in classes at UAA for which he qualified "on the same basis as any other student in good standing."

In November 1994, soon after Hammer affirmed the decision to deny Szejner's application to the Teacher Certification Program, Szejner became involved in an incident with Dr. Roy Rowe. Szejner was enrolled in an education class taught by Rowe. After class on November 1 Szejner asked Rowe to write him a letter recommending that he be admitted into the Teacher Certification Program. Rowe told Szejner that he would not write the recommendation. On November 3 Szejner resigned from UAA.

On November 4 Szejner called Rowe several times, leaving messages on an answering machine at Rowe's office and with Rowe's daughter at his home. Szejner finally reached Rowe and had a conversation with him at 5:30 in the afternoon. He again reached Rowe at his home at 8:30 in the evening. According to Rowe, Szejner accused Rowe of trying to slander him and allegedly said: "Do you have a family? If you slander my character, I will slander your character. I know where you live!" Szejner claims that he actually said to Rowe, "[Y]ou know where to find me."

Szejner also sent Rowe a letter dated November 4, 1994. The letter states:

> This is in reference to our today's conversation.
>
> You said that, quote, "you have to smear me because Mrs. Ada and your boss Dean MacNeill did."
>
> I tell you, you can smear your mother, your father, your daughter, your son, "because your boss did!"
>
> But if you smear my family or myself, quote, "because someone else did," *you will be accountable to me, not to your boss!*
>
> Why? Because I am a Polish-born American citizen—noble and free—not a con-

scienceless, morally-fossilized reptilian peon as you are!

Rowe notified the director of public safety for UAA and the Anchorage Police Department of both the calls and letter. Rowe stated that he considered both the calls and the letter to be threats indicating "a pattern of escalating harassment by Mr. Szejner directed toward me and my daughter."

Linda Lazell, the dean of students, informed Szejner on November 8 that she had received allegations that he had violated the Student Code of Conduct. She requested that Szejner contact her office within three days for a meeting to determine whether disciplinary action was required. After Szejner met with Lazell, Lazell made findings and conclusions regarding the incident with Rowe. She found that Szejner's "telephone calls . . . to Dr. Rowe's home and [his] subsequent letter to him . . . which contained a threat, created a threatening environment for Dr. Rowe." She concluded that Szejner had therefore violated the provision in the Student Code of Conduct prohibiting "endangerment." She placed him on disciplinary probation for one year to begin if and when he re-enrolled as a student at UAA. Szejner appealed to Vice Chancellor for Student Services Kingry, and Kingry denied the appeal on November 29, 1994.

Szejner appealed the decision not to admit him to the Teacher Certification Program and the violation of the Student Code of Conduct to the superior court. After denying Szejner's motion that he recuse himself, Judge Mark C. Rowland affirmed UAA's decisions and granted UAA partial attorney's fees totaling $8,927.25. Szejner appeals.

## III. DISCUSSION

### A. UAA Did Not Err by Denying Szejner Admission to the Teacher Certification Program.[2]

In challenging UAA's decision not to admit him to the Teacher Certification

---

1. As part of the "Certification Endorsement Requirements," the dean of the School of Education and the appropriate department chair must provide a positive recommendation to the commissioner of the Alaska Department of Education on behalf of the candidate.

2. Because UAA's denial of admission to Szejner was based on the application of its own regula-

Program, Szejner first argues that UAA improperly based that decision on his expulsion from the university in 1989. However, subjective factors such as motivation, maturity, and demonstrated humanitarian qualities are valid considerations in academic admissions decisions. *See, e.g., Lucas v. Hahn,* 162 Vt. 456, 648 A.2d 839, 842 (1994), *cert. denied,* 513 U.S. 1149, 115 S.Ct. 1099, 130 L.Ed.2d 1066 (1995) (holding that, in the context of a program to license teachers, concerns over a student's ethical standards and ability to co-operate with superiors "are valid academic matters, because they rank as important measures of an individual's ability to perform as a teacher"); *McDonald v. Hogness,* 92 Wash.2d 431, 598 P.2d 707, 717 (1979). UAA did not err in considering Szejner's expulsion when it evaluated and rejected his application.[3]

■ Szejner correctly argues that the admissions committee misread President Komisar's letter readmitting him to the English program. Komisar's letter stated that Szejner was "readmitted to the Master of Arts in English program for the sole purpose of completing [his] graduate degree program under the non-thesis (directed readings) option." The admissions committee interpreted this to mean that Komisar's letter prohibited his admission to other programs at UAA. However, after Szejner appealed the admissions committee's decision, Komisar clarified his 1991 readmission letter, stating that Szejner was eligible to enroll in classes at UAA for which he qualified "on the same

basis as any other student in good standing." Thus, Szejner is correct that the admissions committee incorrectly relied on Komisar's 1991 readmission letter in denying his application. However, this error was harmless because the graduate committee and Hammer, who heard Szejner's appeal, properly based their decision on Szejner's student record in making their decision.[4]

## B. *UAA Did Not Err in Finding that Szejner Violated the Student Code of Conduct.*[5]

■ Szejner argues that UAA erred in finding that his phone calls and letter to Rowe violated the prohibition in the Student Code of Conduct against "endangerment." The Student Code of Conduct defines "endangerment" as "[c]onduct including, but not limited to, physical abuse, sexual assault, terroristic threats, hazing and/or coercion which endangers or unreasonably threatens the health and/or safety of any person or group of persons, or which cause actual harm to a person or persons." The dean of students, Linda Lazell, specifically found that Szejner called Rowe twice, that he was angry and agitated during the second conversation, that he sent a letter to Rowe stating that "you will be accountable to me, not your boss," that the calls and letter "contained a threat," and that Rowe felt threatened by his actions.

Szejner's chief argument is that Lazell improperly found that he had threatened

---

tions, our scope of review is limited to determining if its decision was arbitrary, unreasonable or an abuse of discretion. *Rose v. Commercial Fisheries Entry Comm'n,* 647 P.2d 154, 161 (Alaska 1982). This is similar to the standard of review applied in other jurisdictions. *E.g., McDonald v. Hogness,* 92 Wash.2d 431, 598 P.2d 707, 717 (1979) (reviewing decision to deny admission to an academic program for "arbitrary and capricious action").

**3.** Szejner also contends that the expulsion was unwarranted and based on "secret" and "spoliated" evidence. Szejner, however, never appealed the expulsion decision, and we will not now review it.

**4.** In his statement of the issues, Szejner asserts that UAA's denial of his application violated the American Disabilities Act. Szejner does not de-

velop this argument in his brief and it is therefore waived. *Weidner v. State, Dep't of Transp. & Pub. Facilities,* 860 P.2d 1205, 1213 n. 9 (Alaska 1993). Szejner also relies on article I, section 1 of the Alaska Constitution to argue that UAA violated his "inherent constitutional rights." This argument was not raised during the administrative process nor set forth in Szejner's points on appeal, and is therefore waived. *Tolstrup v. Miller,* 726 P.2d 1304, 1307 n. 7 (Alaska 1986).

**5.** We review UAA's finding that Szejner violated the Student Code of Conduct under the reasonable basis standard because the finding involves an agency's interpretation of its own regulation, and we review UAA's application of the regulation to the facts to determine if its decision was arbitrary, unreasonable or an abuse of discretion. *Rose v. Commercial Fisheries Entry Comm'n,* 647 P.2d 154, 161 (Alaska 1982).

Rowe.[6] He contends that he had no intent to threaten Rowe physically and that his statements were simply "political hyperbole" or "metaphorical language, irony and sarcasm." Szejner acknowledges, however, that he was "deeply upset" by Rowe's failure to recommend him. He also states that in his letter he "vent[ed] his rightful frustration" at Rowe and "made it as crystal clear" as he could that "false accusations must have accountability," although he qualifies this last point by claiming that he "of course" meant only "legal and moral" accountability.

A threat is defined as a "communicated intent to inflict physical or other harm on any person or property" and as "menace; especially, any menace of such a nature and extent as to unsettle the mind of the person on whom it operates." *Black's Law Dictionary* 1480 (6th ed.1990). Szejner is correct that there may be legitimate disagreement over the interpretation of the letter and the phone conversations. Lazell considered and could have chosen to accept Szejner's account and interpretation rather than Rowe's. However, we conclude that Lazell's finding that the letter and telephone calls "contained a threat" and thus constituted "endangerment" under the Student Code of Conduct was supported by both substantial evidence in the record and a reasonable interpretation of the Student Code of Conduct.

■ The undisputed text of the letter, Rowe's statements about the incident, and Szejner's admitted intent to "vent[ ] his rightful frustration" and impress upon Rowe his "accountability" for refusing to write Szejner a recommendation, provide ample evidence to support Lazell's finding that Szejner threatened Rowe. Furthermore, Lazell had a reasonable basis for concluding that such a threat violated the Student Code of Conduct's "endangerment" provision as "[c]onduct, including but not limited to . . .

terroristic threats, . . . which . . . unreasonably threaten[ ] the health and/or safety of any person or groups of persons." Thus, we hold that UAA did not err in determining that Szejner violated the Student Code of Conduct.[7]

### C.  *UAA Did Not Violate Szejner's Right to Due Process.*

■ Szejner argues that UAA violated his right to due process when it denied him admission to the Teacher Certification Program. For due process to be implicated, there must be a liberty or property interest sufficient to warrant constitutional protection. *Gates v. City of Tenakee Springs,* 822 P.2d 455, 461–62 (Alaska 1991). A person does not have a property interest in admission to graduate school. *Phelps v. Washburn Univ. of Topeka,* 632 F.Supp. 455, 459 (D.Kan.1986). Moreover, the denial of admission to graduate school, "without an underlying charge of dishonesty or publication of reasons for such denial, does not rise to a liberty interest." *Id.* Therefore, Szejner was not due any constitutional process when UAA denied his application.

■ Szejner also asserts that UAA did not provide him due process when it concluded that he violated the Student Code of Conduct and sanctioned him with one year of disciplinary probation. Again, Szejner does not identify any property or liberty interest sufficient to implicate due process concerns. While a school must provide minimal process before suspending or dismissing a student for disciplinary reasons, *Board of Curators of the Univ. of Mo. v. Horowitz,* 435 U.S. 78, 84–89, 98 S.Ct. 948, 952–55, 55 L.Ed.2d 124 (1978), there is no requirement to provide process when the sanction does not interrupt the student's education. *Yench v. Stockmar,* 483 F.2d 820, 824 (10th Cir.1973) (indicating

---

6.  Szejner also suggests that Lazell's decision was motivated not by his conduct toward Rowe but as retaliation for his religion, nationality, "political incorrectness", and vocal dissent. Szejner cites to no evidence, and we find none in the record, to support this claim.

7.  Szejner also argues that a sanction of one year of probation is disproportionate to the violation.

We disagree. Probation is a mild disciplinary sanction consisting merely of a "written reprimand" and the possibility that "more severe disciplinary sanctions" will be imposed for additional violations of "any institutional regulation." Furthermore, because Szejner withdrew from the university before being sanctioned, he only faces the sanction if he re-enrolls.

that probation without expulsion does not implicate constitutional due process).

### D. *The Superior Court Did Not Err in Denying Szejner's Motion for Recusal or in Awarding Attorney's Fees.*

■ Szejner argues that Judge Rowland should have recused himself because the attorney representing UAA before the superior court sat on the Alaska Judicial Council in 1992 and voted to recommend the retention of Judge Rowland. This argument is meritless. Judge Rowland did not abuse his discretion in determining that the attorney's position and actions as a member of the Judicial Council did not prevent or appear to prevent a fair and impartial decision in this matter. *See* AS 22.20.020(a)(9).

Szejner also argues that the superior court erred in awarding attorney's fees. However, because he fails to offer any reason why the award in this case was an abuse of the superior court's discretion, we reject his argument.

### IV. *CONCLUSION*

For the above reasons, we hold that UAA did not act improperly in denying Szejner admission to the Teacher Certification Program or in finding that he had violated the Student Code of Conduct. We therefore AFFIRM the decision of the superior court.