USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2333 GAURAV MANGLA, Plaintiff - Appellant, v. BROWN UNIVERSITY, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ John R. Gibson,* Senior Circuit Judge, ____________________ and Pollak,** Senior District Judge. _____________________ _____________________ Douglas A. Giron for appellant. ________________ Christopher H. Little, with whom John E. Bulman and Little _____________________ ______________ ______ Bulman & Reardon, P.C. were on brief for appellee. ______________________ ____________________ February 2, 1998 ____________________  ____________________ * Of the Eighth Circuit, sitting by designation. ** Of the Eastern District of Pennsylvania, sitting by designation. JOHN R. GIBSON, Senior Circuit Judge. Gaurav Mangla JOHN R. GIBSON, Senior Circuit Judge. _____________________ appeals from a judgment as a matter of law entered in favor of Brown University following a trial on his breach of contract and promissory estoppel claims. He argues that the district court erred in granting judgment, as a reasonable jury could have found that Brown breached the contract, acted arbitrarily and in bad faith, and that Brown was estopped from denying him admission to the graduate school. He argues that the court improperly raised certain evidence and overlooked and misconstrued other evidence in reaching this decision. We affirm the judgment of the district court. Mangla applied for admission to the Brown Graduate School in September 1993, and was admitted as a probationary special student, a category of enrollment that permits the taking of graduate level courses but which is not in itself a degree program. His admission in this capacity was recommended by the Computer Science Department and approved by the graduate council. Associate Dean Joan Lusk met with Mangla at that time and explained to him that his admission was probationary because he lacked the requisite academic background or course work in computer science. Lusk further told Mangla that in order to be admitted to the degree program he would need to successfully complete course work in the Computer Science Department. Mangla claims to have satisfactorily completed seven of the eight courses required for a Master's degree.  -2- After completing such course work, Mangla inquired of Dean Lusk about his probationary status, and she instructed him to obtain a faculty advisor for his Master's Project. In response, Mangla obtained a letter signed by Professor Stanley Zdonik, stating that Mangla "will be working under my supervision for his Master's project." Mangla claims that at the time he believed the letter served as a letter of recommendation for admission into the degree program. In September 1995, Brown informed Mangla that his special student status was discontinued and that he had not been admitted into the Master's program. Mangla thereafter filed a new, formal application for admission into the Master's program. The Computer Science Department faculty reviewed the new application and voted to recommend that Mangla's application be denied. Mangla then appealed to the Graduate Council which voted unanimously to uphold the department's decision. Mangla brought this action for breach of contract and promissory estoppel for Brown's refusal to admit him into its Master's program. The action was tried before a jury, but at the close of evidence, the judge granted judgment as a matter of law to Brown and dictated detailed findings into the record. The district court first decided that there was no breach of contract because Mangla knew that one of the things he had to do in performing his side of the contract was to obtain a favorable recommendation from the Computer Science Department faculty and there was no evidence that any such recommendation was obtained. -3- The court acknowledged Mangla's testimony that Dean Lusk told him he would absolutely be admitted if he passed his courses or if he got a faculty member to act as his advisor. The court stated, however, that the key testimony was Mangla's admissions that notwithstanding anything that Dean Lusk may have told him, he knew that a recommendation from the faculty was a requirement for his admission into the Master's Program. The court further found that there was no promissory estoppel because there was no reasonable reliance on any of the alleged representations. There was explicit language in the Graduate School manual that even the department does not have the power to offer admission and that offers of admission have binding force only when made by the Graduate School in writing. The court stated that Mangla's argument that he was entitled to the written offer of admission is nothing more than a circumvention of the explicit requirement set forth in the Graduate School manual. Further, the district court stated that it was quite a stretch to interpret Professor Zdonik's letter as amounting to a recommendation by the Department that Mangla be accepted. Even viewing the letter in the light most favorable to Mangla, the district court determined that it defied logic and reason to read the letter as a recommendation from the Computer Science Department. Thus, the district court held that there was no issue for the jury to decide, and judgment as a matter of law was granted. -4- I. I. In ruling on a motion for judgment as a matter of law, the district court must examine the evidence, and inferences to be drawn therefrom, in the light most favorable to the non- movant. See Rol n-Alvarado v. Municipality of San Juan, 1 F.3d ___ ______________ _________________________ 74, 76 (1st Cir. 1993). Judgment as a matter of law may then be granted "only if the evidence, viewed from this perspective, is such that reasonable minds could not differ as to the outcome." Id. at 77. ___ When a judgment as a matter of law is appealed to this court, we must apply precisely the same criteria that constrain the district court. See Gibson v. City of Cranston, 37 F.3d 731, ___ ______ ________________ 735 (1st Cir. 1994). Accordingly, we review the grant of judgment as a matter of law under a de novo standard. See ___ Jordan-Milton Mach., Inc. v. F/V Teresa Marie, II, 978 F.2d 32, _________________________ ____________________ 34 (1st Cir. 1992). II. II. Mangla argues that judgment as a matter of law was inappropriate because a reasonable jury could find that Brown University breached a contract with Mangla by refusing to confer regular degree status upon him. The district court, in this diversity case, was required to apply the substantive law of Rhode Island. However, after careful research, we have discovered no case in which the Rhode Island courts have addressed the contractual relationship between a private academic institution and its students. We -5- therefore resolve Mangla's breach of contract claim according to those legal principles which we believe the Rhode Island courts would most likely adopt. See Lyons v. Salve Regina College, 565 ___ _____ _____________________ F.2d 200, 202 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978). _____ ______ The student-college relationship is essentially contractual in nature. See Russell v. Salve Regina College, 938 ___ _______ ____________________ F.2d 315, 316 (1st Cir. 1991). The terms of the contract may include statements provided in student manuals and registration materials. See Lyons, 565 F.2d at 202 (construing College Manual ___ _____ and Academic Information booklet as terms of a contract between a student and college). The proper standard for interpreting the contractual terms is that of "reasonable expectation -- what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." Id. ___ (quoting Giles v. Howard University, 428 F. Supp. 603, 605 _____ _________________ (D.D.C. 1977)). Mangla maintains that he reasonably expected that if he satisfactorily performed his course work and obtained a sponsor for his master's project he would be admitted as a master's degree candidate in the Computer Science Department. Mangla bases his claim on the alleged statements of Associate Dean Lusk and members of the Computer Science Department faculty. However, Brown University's graduate school catalog specifically provided: Caveat. Applicants are asked to take particular notice of the fact that the individual academic departments, while having a major role in evaluating the applications of all candidates, do not have the power to offer admission, and -6- that offers of admission have binding force only when made by the Graduate School in writing over the signature of the Dean of the Graduate School or her representative. By its terms, this provision divested faculty members of any authority to promise admission or to determine the necessary prerequisites for admission. Because the provision was included in the graduate school catalog, Brown could reasonably expect students to be aware of the policy. Thus, it was reasonable for Brown to expect its students not to rely on oral statements by individual faculty members as binding promises by the university. Likewise, the statements of Associate Dean Lusk did not give Mangla a right to be admitted. As an apparent representative of the Dean of the Graduate School, Lusk arguably had the authority to offer admission. The caveat, however, restricted the acceptable form of such an offer to a signed writing. Mangla concedes that no such writing exists in this case. Therefore, the language of the graduate school catalog seriously compromises Mangla's claim that Lusk's statements gave him a contractual right to be offered admission. As Mangla correctly asserts, the graduate school catalog is not a wholly integrated contract but instead is only one part of a more complex contractual relationship between the student and the college. We do not foreclose the possibility that, under certain circumstances, the university could obligate itself through the actions and oral statements of its officials, -7- despite the language of the caveat provision. A reasonable jury, however, could not find that such circumstances exist in this case. Particularly fatal to Mangla's contract claim in this case was his failure to secure a recommendation from the department faculty. Mangla admitted at trial that he understood that a faculty recommendation was a prerequisite to his admission as a regular degree candidate. Mangla maintains that this requirement was reasonably met by a letter signed by Professor Zdonik, a member of the Computer Science department faculty. The Zdonik letter does not, however, recommend that Mangla be admitted. Rather, the letter, addressed "To whomever it may concern," identifies Mangla as a graduate student working under Zdonik's supervision "for his Master's project" and requests that Mangla be provided with help and the use of resources for his research while living in Princeton, New Jersey. Mangla does not claim to have informed Zdonik of his intent to use the letter as a letter of recommendation. Indeed, Mangla does not even contend the letter was a faculty recommendation, but instead contends that he reasonably believed it was the "equivalent of a recommendation." No reasonable jury could find that the letter signed by Zdonik reasonably fulfilled the prerequisite of a faculty recommendation. As a result, no reasonable jury could conclude that Brown should have reasonably expected Mangla to believe that the university was contractually obligated to admit him. -8- III. III. Mangla argues that a jury could reasonably find that Brown acted arbitrarily or in bad faith in refusing to admit Mangla as a regular degree candidate. Brown responds that Mangla's claim of arbitrariness must fail because the university's decision did not substantially depart from established academic norms. Under Rhode Island law, contracts contain an implied duty of good faith and fair dealing. See A.A.A. Pool Service & ___ ______________________ Supply, Inc. v. Aetna Casualty & Surety Co., 395 A.2d 724, 725 ____________ ____________________________ (R.I. 1978). Because the parties do not contend otherwise, we assume for the purposes of argument that Brown's duty of good faith extended to its review of Mangla's application for admission as a degree candidate. We thus turn our focus to the question of whether Brown met that duty. The decision to grant or deny admission to a student is a quintessential matter of academic judgment. Courts have long recognized that matters of academic judgment are generally better left to the educational institutions than to the judiciary and have accorded great deference where such matters are at issue. As the Supreme Court stated in Regents of University of Michigan _________________________________ v. Ewing, 474 U.S. 214, 225 (1985), "Plainly, [judges] may not _____ override [the faculty's professional judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." -9- Applying the standard of deference enunciated in Ewing, _____ we conclude that no reasonable jury could find that Brown acted arbitrarily or in bad faith in refusing to admit Mangla as a regular degree candidate. The Computer Science Department recommended against Mangla's admission on the ground that Mangla did not demonstrate an ability to undertake the research or independent work required for a Master's thesis or project. The department's position was based in part on negative assessments of Mangla's research capabilities provided by professors who had supervised Mangla's previous attempts at a research project. Mangla argues the department's decision was arbitrary and in bad faith because he was never informed that he would be judged on his ability to do independent research. Mangla, however, was aware that a Master's thesis or project was a necessary component of the Master's program. We believe it is self-evident that a committee evaluating an application for admission into a Master's program would be concerned with the applicant's prospects of successfully completing the degree requirements. The evidence establishes that Brown judged Mangla according to legitimate criteria and had a sufficient basis for believing that Mangla did not meet those criteria. Consequently, no reasonable jury could infer that Brown acted arbitrarily or in bad faith when it decided not to admit Mangla as a degree candidate. IV. IV. -10- Finally, Mangla argues that a reasonable jury could have found Brown liable on a promissory estoppel theory. We reject his argument. Under Rhode Island law, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." B.M.L. Corp. v. Greater _____________ _______ Providence Deposit Corp., et al., 495 A.2d 675, 677 (R.I. 1985) _________________________________ (quoting 1 Restatement (Second) Contracts 90 at 242 (1981)). Thus, the proper focus of our inquiry is again on the reasonable expectations of the party making the manifestation. As we have previously discussed, Brown should not have reasonably expected Mangla to rely on the oral statements of Dean Lusk or the individual faculty members as binding promises of admission. Therefore, we uphold the district court's ruling that no reasonable jury could find that Brown was estopped from denying Mangla admission as a Master's degree candidate. We affirm the judgment as a matter of law in favor of ______ Brown University.  -11-