Fishman, J.
This matter is before the Court on plaintiff Adam Ackermann’s motion for a preliminary injunction ordering the defendants President and Trustees of the College of the Holy Cross (“College”) to, pending a trial on the merits of this action, reinstate Plaintiff as a student at the College. Following a hearing, the plaintiffs application for injunctive relief is ALLOWED.
Ackermann, a Junior at the College and captain of the Holy Cross football team for the 2003-04 season, was suspended from the College for twelve months, for verbal harassment of a teammate and former roommate, Christopher Vella. Ackermann has been accused of repeatedly referring to Vella as “fag,” “AIDS Boy,” “queer,” “homo,” and other demeaning terms, and this course of conduct was allegedly so demeaning, threatening and harassing that Vella felt compelled to withdraw from the College. The plaintiff admitted to using the kind of language attributed to him but claimed it was harmless and that Vella made similar comments to others. Ackermann’s suspension was predicated on the finding, among others, that the plaintiff posed a threat to the campus community due to his “wilful and malicious decision! ] to engage in inappropriate conduct ...” His notice of suspension stated that he was found responsible for causing “Mental or Bodily Harm (A-11) specific to verbal abuse, threats, harassment and intimidation; which threatens or endangers the health, well-being or safety of any person and in violation of engaging in Bias Related Incidents/Acts of Intolerance (A-2) . . ,”[1]
In order to prevail on his request for preliminary injunctive relief, the plaintiff bears the burden of showing his likelihood of success on the merits of his claim; that he will suffer irreparable harm if the injunctive relief is not granted; and that his harm, without injunction, outweighs any harm to the defendants from them being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group v. Cheney, 380 Mass. 609, 616-17 (1980). The plaintiff has met this burden.
*109 Ackermann has made a compelling showing of the harm he will likely suffer if denied injunctive relief. If not promptly reinstated, he will have missed too much of the Spring 2003 semester to make up his work and gain credit for the semester. He has further made a showing that he is beyond the point when he can transfer to a comparable school and be able to graduate in May 2004, as he would have had this suspension not occurred. Finally, of course, he will be denied the opportunity to fulfill his role as the elected captain of the football team for the 2003-04 season. Clearly, the College has countervailing risks of harm relating to its concerns for both the threat to its community that Ackermann’s presence on campus allegedly presents and the risk that the College’s independence in disciplinary matters will be undermined. But the College faces at least as great a risk of harm if it is perceived as ignoring the very rules of procedures it has established in disciplinary matters. “While the university’s obligation to keep its members safe ... is of great importance, at the same time the university cannot tell its students that certain procedures will be followed and then fail to follow them. In a hearing on a serious disciplinary matter there is simply too much at stake for an individual student to countenance the university’s failure to abide by the rules it has itself articulated.” Schaer v. Brandeis University, 432 Mass. 474, 485 (2000) (Ireland, J., dissenting).
In one regard, Ackermann has failed to sustain his burden of showing the likelihood of success on the merits of his claims. The plaintiff has a substantial hurdle to overcome given the broad discretion given colleges and universities in regard to their disciplinary decisions and the process leading to those decisions. Schaer, 432 Mass. at 482. While these institutions must not act “arbitrarily and capriciously” in disciplining students, Coveney v. President & Trustees of Holy Cross, 388 Mass. 16, 19 (1983), in the case at bar, the College conducted an investigation, found a serious violation of thé Community Standards by the plaintiff and imposed a reasonable sanction.[2]
The plaintiff, however, has made a sufficient showing of the existence of a contractual relationship with the College, the terms of which are contained in a handbook entitled “Community Standards and Judicial Procedures for Students” (“handbook”).[3] See Mangla v. Brown University, 135 F.3d 80, 83 (1st Cir. 1983); Dinu v. President Fellows of Harvard College, 56 F.Sup.2d 129, 130 (D.Mass. 1999). In addition, he has made an adequate showing of the likelihood of success of his claim that this contract was breached. The plaintiffs principal claim is that the contract was breached by the failure of the College to afford him a “Community Standards Board Hearing,” as distinguished from the “Procedural Interview” that he received.[4]
In these circumstances, this Court must consider what meaning the College should reasonably expect its students to give the terms of the contract embodied in the handbook. Schaer, 432 Mass. at 478 (citations omitted). If the handbook only provided that the plaintiff was entitled to basic fairness and completely left the adjudication of the type of violations of Community Standards implicated in this case to the individual who conducted the investigation and made the disciplinary decision,[5] the plaintiff would not be entitled to the relief he has requested. The handbook, however, states that a complaint with the potential sanction of suspension “normally” is directed to a Community Standards Board, see Exhibit K to the Complaint, at p. 5, ID. Although, it also provides that “(s)tudents who have allegedly violated a category ‘A’ violation will have their cases adjudicated by the JAC or designee,” id., at p. 8, such ambiguities will be construed against the College as the drafter of the handbook, particularly since there is no evidence that the students had any meaningful opportunity to negotiate any of the terms within that document. See Corso v. Creighton University, 731 F.2d 529, 532-33 (8th Cir. 1984).
More significantly, the handbook clearly and unambiguously limits decisions which can be reached at the Procedural Interview. A contested suspension cannot be imposed through a Procedural Interview, unless referral has been made by the JAC to the Community Standards Board for a hearing. See Exhibit K to the Complaint, at p. 16, 13. Moreover, the “fundamental fairness” requirements of the handbook clearly contemplate a Community Standards Board hearing before a student is subjected to serious disciplinary action. Id. at p. 13. The plaintiff thus has a likelihood of success of prevailing on his claim that he had a reasonable expectation that, faced with the alleged serious violations in this case, he was entitled to, but did not receive, a Community Standards Board hearing and all the process guaranteed in connection with such hearings. Exhibit K, at pp. 18-22.[6]
ORDER
Accordingly, for all the foregoing reasons, plaintiffs motion for a preliminary injunction is ALLOWED, and it is hereby ORDERED that, pending a trial on the merits of this action or further action by the College in compliance with the terms of its Community Standards and Judicial Procedures for Students handbook consistent with this decision, the defendants reinstate the plaintiff as a student at the College of the Holy Cross.

 The letter of suspension identifies the specific “Code A offenses” contained in the Community Standards and Judicial Procedures for Students handbook that the plaintiff was found to have violated. The plaintiff was found not responsible of other allegations. Another member of the football team was suspended, and several others were placed on probation.

 The plaintiff argues as well that the College’s conduct must necessarily be viewed as arbitrary and capricious if the College has ignored its own mies and regulations relating to disciplinary proceedings. That issue need not be addressed here given this Court’s decision relating to the merits of the plaintiffs breach of contract claim.

 While counsel for the defendants at the hearing claimed there is no contractual relationship, the defendants have failed to provide any support for that contention. Indeed, the defendants rely on the handbook (which they describe as the 2002-03 Student Handbook Addendum) to define the offenses and procedural requirements involved in disciplinary matters.

 Ackermann also claims that the contract was breached by the College’s purported failure to advise him with specificity regarding the charges against him and for failing to provide him with the particular procedural safeguards that are part and parcel of a Community Standards Board hearing.

 That person was the Assistant to the Vice President for Student Affairs/Judicial Affairs Coordinator (“JAC”).

 Of course, nothing in this decision prevents the College from conducting the hearings which are contractually mandated. Ackermann’s request that the Court conduct any future hearings at the College is without support and is denied.